# PD-1120-15

PD-1120-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/26/2015 2:21:24 PM
Accepted 8/28/2015 11:43:45 AM
ABEL ACOSTA
CLERK

## IN THE COURT OF CRIMINAL APPEALS
## OF AUSTIN, TEXAS

| | | |
|---|---|---|
| **THOMAS LESTER HARPER,** | § | |
| **Appellant** | § | |
| | § | NO._____ |
| **vs.** | § | |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| **Appellee** | § | |

## ON PETITION FOR DISCRETIONARY REVIEW FROM THE DECISION OF THE COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS, AT FORT WORTH, TEXAS IN CAUSE NO. 02-14-00189-CR AFFIRMING APPELLANT'S CONVICTION AND SENTENCE IN CAUSE NO. 1318353R HONORABLE WAYNE SALVANT, PRESIDING FROM THE CRIMINAL DISTRICT COURT NUMBER TWO OF TARRANT COUNTY, TEXAS

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

August 28, 2015

ABEL ACOSTA, CLERK

**Richard A. Henderson**
**State Bar No. 09427100**

**RICHARD A. HENDERSON, P.C.**
**100 Throckmorton Street, Suite 540**
**Fort Worth, Texas 76102**
**817-332-9602 - Telephone**
**817-335-3940 – Facsimile**
**_richard@rahenderson.com_**

**ATTORNEY FOR APPELLANT, THOMAS LESTER HARPER**

# SUBJECT INDEX

IDENTITY OF PARTIES AND COUNSEL ..........................................................ii,iii

TABLE OF AUTHORITIES..................................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ............................................ 1

STATEMENT OF THE CASE ............................................................................. 1

STATEMENT OF PROCEDURAL HISTORY ................................................... 3

GROUND FOR REVIEW.................................................................................... 3

REASONS FOR REVIEW ................................................................................... 3

CONCLUSION AND PRAYER............................................................................ 7

CERTIFICATE OF COMPLIANCE .................................................................... 8

CERTIFICATE OF SERVICE.............................................................................. 8

APPENDICES ...................................................................................................... 9

Appendix "A"
 (Opinion of the Court of Appeals Second District of Texas,
 Fort Worth, Texas)

Appendix "B"
 (Motion for Rehearing)

Appendix "C"
 ( Order denying appellant's motion for rehearing)

i

# IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of all parties pursuant to Texas Rules of Appellate Procedure 68.4(a):

1. **Mr. Thomas Lester Harper**
   **TDCJ #01931894**
   O.B. Ellis Unit
   1697 FM 980
   Huntsville, Texas  77343
   **Defendant/Appellant**

2. **Mr.Leo Haley, Jr.**
   1319 Ballinger Street
   Fort Worth, Texas  76102
   **Ms. Elizabeth Anne Miller**
   Law Offices of Roderick C. White
   2201 Main Street, Ste 800
   Dallas, Texas  75201
   **Mr. Ezekiel Tyson, Jr.**
   Tyson Law Firm PLLC
   342 W. Montana Avenue
   Dallas, Texas  75224
   **Trial Attorneys for Defendant**

3. **THE STATE OF TEXAS**
   **Ms. Amy Collum**
   Assistant Criminal District Attorney, Tarrant County
   **Mr. Jack V. Strickland**
   Assistant Criminal District Attorney, Tarrant County
   401 W. Belknap Street
   Fort Worth, Texas  76196
   **Trial Attorneys**

**Mr. Charles Mallin**
Former Chief of Appellate
Tarrant County District Attorney's Office
**Mr. Joe Shannon, Jr.**
Former Criminal District Attorney
Tarrant County, Texas
401 W. Belknap Street
Fort Worth, Texas 76196

**Ms. Debra Windsor, Chief, Post -Conviction**
Assistant Criminal District Attorney
Tarrant County, Texas
401W. Belknap Street
Fort Worth, Texas 76196

**Ms. Sharen Wilson**
Criminal District Attorney
Tarrant County, Texas
401 W. Belknap Street
Fort Worth, Texas 76196
**Plaintiff/Appellee**

4. **Honorable Wayne Salvant**
   Judge, Criminal District Court No. Two
   401 W. Belknap Street
   Fort Worth, Texas 76196
   **Trial Judge**

5. **Richard A. Henderson**
   **Richard A. Henderson, P.C.**
   100 Throckmorton Street
   Suite 540
   Fort Worth, Texas 76102
   **Attorney for Appellant**

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. State,* 179 S.W.3d 84 (Tex. App.— Fort Worth 2005) ........................ 4

*Juarez v. State,* 308 S.W.3d 398,399 (Tex. Crim. App. 2010) ............................ 4,5,6

## CODES:

Tex. Penal Code Ann. § 9.22 .............................................................................. 4,6

Tex. Penal Code Ann. § 2.03(c) ........................................................................... 5,6

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner believes that oral argument would aid the court in deciding the critical issues presented.

## STATEMENT OF THE CASE

This is an appeal from Cause Number 1318353R from Criminal District Court Number Two, Tarrant County, Texas, the Honorable Wayne Salvant, judge presiding. The two count indictment alleged murder with a deadly weapon, a firearm. The plea was not guilty. The jury found Appellant guilty of murder. The jury assessed punishment at life in the Institutional Division of the Texas Department of Criminal Justice. The trial court denied a requested jury charge by Appellant of necessity after Appellant had testified that he shot the decedent, Clarence Robinson, but did so to protect his children.

December 14, 2011 was a tragic and violent day in the City of Arlington, Texas, specifically, at the intersection of Brown and Collins Streets, where a deadly collision occurred.

Appellant, while driving a Tahoe truck, with his twin children in the rear seat, had a relatively minor collision at Collins and Washington Streets with a vehicle in which Zachry Treible and Kay Lynn Head were riding. It was about 1:40

1

in the afternoon. Appellant continued on Collins, accelerating at a high rate of speed. As he approached the intersection of Brown and Collins, he struck a Dodge Dakota, being driven by Najee Nazir. Appellant's speed was calculated at 93 miles per hour. Appellant never applied his brakes. A chain reaction collision occurred, as other vehicles were struck. Najee Nazir was killed and pronounced dead at the scene.

The collision was captured on video from cameras at a nearby Valero gas station. The impact is clearly visible on the video as is the sound, which witnesses described as sounding like a bomb went off. The axle and wheel were knocked off Nazee Nazir's Dakota and the wheel was found down a nearby hill in an apartment parking lot. The Dakota, driven by Najee Nazir, is clearly visible in the Valero video prior to the collision, as is the impact.

After the collision, many people rushed up to help the injured. One of these was Clarence Robinson who had been eating food at a nearby McDonald's. Zach Treible approached Appellant's vehicle and saw Appellant incoherent and two young children screaming in the back seat. Robinson was able to get one of the children out of the vehicle while the child was still in a car seat. Appellant then first pointed a gun at Treible, then at Robinson, and fired a shot at Robinson who

2

immediately fell to the ground. He was dead at the scene. He had a soda straw from McDonald's still in his mouth.

Appellant testified in his defense. He admitted the conduct of killing Robinson but that he did so because he felt it was necessary to protect his children.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals issued its Opinion affirming the conviction on July 2, 2015. A Motion for Rehearing was e-filed by Appellant on July 15, 2015. The Motion for Rehearing was overruled by the Second Court of Appeals on July 30, 2015. This Petition for Discretionary Review is timely if filed on or before August 29, 2015.

## GROUND FOR REVIEW

GROUND FOR REVIEW: Is it reversible charge error to deny a requested necessity instruction as a matter of law when an accused admits the underlying conduct of murder but testifies he did so to protect his children?

## REASONS FOR REVIEW

REASONS FOR REVIEW:

The Court of Appeals in its opinion ruled that Appellant's assertion of necessity was insufficient as a matter of law.

3

This court stated in *Juarez v. State,* 308 S.W.3d 398,399 (Tex. Crim. App. 2010), that when an accused admits the underlying conduct but states that it was necessary, a jury instruction is mandatory no matter how weak the evidence may seem. See also *Armstrong v. State,* 179 S.W.3d 84 (Tex. App.— Fort Worth 2005).

In this case, the Appellant took the stand and specifically admitted to the conduct. Appellant then stated he believed it was necessary to protect his children.

In *Juarez* this court stated that necessity invokes the long-standing legal doctrine of confession and avoidance. Two things must occur. First, a defendant must admit to all elements of a charged offense before the defendant will be entitled to a defensive instruction. Alternatively, a defensive instruction is required when the defendant's defensive evidence essentially admits to every element of the offense, including the culpable mental state.

The defense of necessity is defined in Tex. Penal Code Ann. § 9.22 and states:

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

4

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

In *Juarez*, the court also stated that the confession and avoidance doctrine applies to the necessity defense, and acknowledged that the doctrine conflicts with Tex. Penal Code Ann. § 2.03(c)'s general rule governing when a defensive instruction is required. Section 2.03(c) states: "The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense." The defendant bears the burden of showing that each element of the defense has been satisfied.

This court also stated that a trial judge must, upon a defendant's proper request, instruct the jury on every defensive issue raised by the evidence without regard to its source or strength. Under this doctrine, it is of no consequence "whether such evidence or testimony was produced by the prosecution or the accused, or whether such defensive evidence or testimony might be strong, weak, unimpeached, or contradicted."

In *Juarez,* the court also stated that confession and avoidance doctrine's requirement that a defendant admit to the conduct conflicts with Tex.Penal Code Ann. § 2.03(c)'s general rule that a defense is supported by the evidence if there is evidence from any source on each element of the defense.

The court further ruled:

"However, this conflict does not disturb our determination that § 9.22 embraces the confession and avoidance doctrine. When interpreting statutes that are *in pari materia* and construed together, both are given effect with the special governing over the general in the event of a conflict. In this instance, Tex.Penal Code Ann. § 9.22's admission requirement governs the specific defensive issue of necessity and therefore trumps Tex.Penal Code Ann. § 2.03(c)'s general rule."

In the instant case, the Appellant admitted he shot and killed Clarence Robinson but Appellant stated that he did so to protect his child, not knowing that Clarence was actually trying to help.

The issue was raised and the jury should have been instructed.

6

## CONCLUSION AND PRAYER

WHEREFORE, Appellant respectfully requests that the case be reversed and rendered in his favor or at least for a new trial.

Respectfully Submitted,

RICHARD A. HENDERSON, P.C.
Two City Place
100 Throckmorton Street
Suite 540
Fort Worth, Texas 76102
(Telephone) 817-332-9602
(Telecopier) 817-335-3940
E-mail: richard@rahenderson.com

By: _____
Richard A. Henderson
State Bar No. 09427100

**ATTORNEY FOR APPELLANT
THOMAS LESTER HARPER**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX.R.APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX.R.APP. P. 9.4(i) because it contains 1,830 words, excluding any parts exempted by TEX.R.APP.P. 9.4(i)(1), as computed by the word-count feature of Microsoft Office Word 2010, the computer software used to prepare the document.

Richard A. Henderson

## CERTIFICATE OF SERVICE

A true copy of the Appellant's Petition For Discretionary Review has been electronically served on opposing counsel, Ms. Debra Windsor, Assistant Criminal District Attorney, Chief, Post-Conviction, Tarrant County District Attorney's Office, 401 W. Belknap Street, Fort Worth, Texas 76196 and mailed U.S. Regular Mail to Appellant, Mr. Thomas Lester Harper, TDCJ #01931894, Ellis Unit, 1697 FM 980, Hunstville, Texas 77343 on this 26th day of August 2015.

Richard A. Henderson

8

# APPENDICES

# APPENDIX "A"

# OPINION OF
# COURT OF APPEALS
# SECOND DISTRICT OF TEXAS
# Fort Worth



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00189-CR

THOMAS LESTER HARPER                                    APPELLANT

V.

THE STATE OF TEXAS                                         STATE

----------

### FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
### TRIAL COURT NO. 1318353R

----------

## OPINION

----------

## I. Introduction

In four issues, appellant Thomas Lester Harper appeals his murder conviction. We affirm.

## II. Factual and Procedural Background

On December 14, 2011, at around 1:40 p.m., while under the influence of marijuana, Harper was driving his Tahoe SUV on Collins Street in Arlington,

Texas. His two-year-old twins were in the back seat.[1] As Harper's vehicle approached the intersection of Collins and Washington, the Tahoe sideswiped the back of another vehicle that had stopped for the red light. Rather than stop after the collision occurred, Harper continued through the intersection against the red light. The driver and passenger of the rear-ended vehicle called 911 and attempted to follow Harper's vehicle, but they could not keep up with Harper, who was travelling over 80 miles per hour in a 35-mile-per-hour zone. The next time they saw Harper's vehicle, it was "flying to the side of the road," having collided with several other vehicles in the roadway. That second collision caused the afternoon's first fatality, Najee Nasir, the driver of a gray pickup truck.

911 callers at the scene of the second collision described it as a "massive wreck" caused by "some guy [who] plowed through what look[ed] like half a dozen cars" as he was speeding through the intersection.[2] The Tahoe's front-end was destroyed, its engine compartment and windshield were smashed, some of the doors on the front side of the vehicle were bent, and the SUV was smoking and leaking fluids. Harper's children could be heard crying inside.

Several bystanders, including the driver of the vehicle that had been sideswiped in the first collision, rushed to Harper's vehicle to render aid. One of

_____

[1]The children were secured in dangerous "booster seats," instead of the more protective and age-appropriate safety seats. Booster seats are designed for older children.

[2]The engine diagnostic recorder from Harper's vehicle did not indicate that Harper applied his brakes.

the first good Samaritans to arrive, eighteen-year-old Clarence Robinson, attempted to rescue Harper's children from the back seat of his smoking SUV. After Robinson managed to release the first child from the mangled, smoking vehicle, Harper pulled out a handgun and shot him, causing both Robinson and the child to fall to the ground. *See* Tex. Penal Code Ann. § 19.02(b) (West 2011). The child's empty car seat remained on top of Robinson's body until police were able to arrest Harper, and the child crawled in the street until someone was able to pick her up.

In the meantime, John Derichweiler, a peace officer employed by the Department of Homeland Security's Federal Protective Service, who had just left a nearby restaurant, arrived at the scene of the collision. As he pulled his marked vehicle behind one of the cars, a man approached him, yelling "he's still got a gun,"[3] pointing toward Harper's vehicle. Realizing that he was witnessing more than just a traffic accident, Inspector Derichweiler grabbed his shotgun, directed onlookers to get away from the SUV, and ordered the driver to "show [his] hands." Harper did not comply,[4] but after issuing his command, Inspector Derichweiler did see two little hands appear out of the back seat window. At that

---

[3]Several of the 911 callers were still on the phone reporting the collisions when they heard Harper's gunshot and saw it scatter the people who were trying to help. One of the callers reported that while people were trying to rescue the injured, Harper "just shot the man who was trying to take his baby out [of] the car."

[4]Harper never complied with the order to show his hands.

3

point, realizing that there was a child in the back seat, Inspector Derichweiler kept his gun aimed at Harper and waited for other emergency units to arrive before attempts were made to handcuff Harper and remove him from the vehicle.[5]

The fire department had to use the "jaws of life" to extract Harper from the vehicle after he was placed in handcuffs. Inspector Derichweiler then secured his shotgun, cut the seatbelt off the remaining child, and helped pull the child out of the window and away from the SUV.[6]

Three hours later, after Harper had been released from the hospital he had been transported to for medical treatment, he was escorted to jail. That day, Harper left behind two dead in his wake—Nasir, the driver of the gray pickup truck whose medical needs could not be attended to while the officers were required to focus on Harper, and Robinson, the good Samaritan who Harper shot with his handgun.

At the close of evidence in the trial for Robinson's murder, Harper requested a jury instruction on necessity, and the trial court denied the request. The jury found Harper guilty of murder as charged in the indictment.

---

[5]Inspector Derichweiler testified that during this time, another citizen sought his help with Nasir, the man in the gray pickup, who had been seriously injured in the collision. He recalled, "[H]e's like, [t]hat dude is dying in there, he's dying in there," but Inspector Derichweiler explained that he was unable to attend to the injured man's needs at that time. Instead, he responded, "Let me deal with the guy with the gun first."

[6]Harper and his children were uninjured.

4

During the punishment phase of the trial, Harper requested a jury instruction on sudden passion, and the trial court denied the request. The jury assessed Harper's punishment at confinement for life and a $10,000 fine.

### III. Jury Charge

In his first two issues, Harper argues that the trial court erred by denying jury instructions on necessity and sudden passion, contending that these instructions were required based on his testimony that he shot Robinson but believed the shooting was necessary to protect his children.

### A. Standard of Review

In our jury charge review, we first determine whether error occurred; if error did not occur, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). A trial court may refuse an instruction on a defensive theory if the issue was not raised by the evidence. *Murkledove v. State*, 437 S.W.3d 17, 21 (Tex. App.—Fort Worth 2014, pet. dism'd, untimely filed) (citing *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1059 (2008)). When reviewing a trial court's decision to deny a requested defensive instruction, we view the evidence in the light most favorable to the defendant's requested submission. *Id.* (citing *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006)).

## B. Evidence

Harper testified that on the day of these events, he either blacked out for "a little split second"[7] or fell asleep and then was hit by a vehicle.[8] Harper testified that his foot remained on the gas, and he accelerated. He posited that his truck's accelerator had malfunctioned,[9] and he remembered his vehicle being hit again and spinning out before his airbag deployed, leaving him in and out of consciousness and in a daze. He said he recalled his children "yelling and whining and crying or whatnot" but they did not appear to be injured on the outside.

---

[7] Harper's urine and blood tested positive for marijuana, but Harper denied having smoked marijuana on December 14, claiming it had been a month since his last use. He nonetheless acknowledged that marijuana was in his system on that day. A police officer testified that Harper had laughed, spoken nonsensically, and mugged for the news cameras after his arrest, and a television clip taken by a media helicopter showing Harper's post-arrest behavior was admitted into evidence. The DWI officer who received Harper's consent to a blood draw testified that he appeared drowsy and, based on his bloodshot eyes, delayed response, and repetitiveness in asking the same questions over and over, she suspected that he was under the influence of marijuana. The chief toxicologist for the Tarrant County Medical Examiner's Office testified that the side effects of tetrahydrocannabinol (THC), the active ingredient in marijuana, can be severe, ranging from increased appetite, drowsiness, confusion, and red, watery eyes to impaired judgment and hallucinations.

[8] The driver and passenger of the first vehicle that Harper hit testified that Harper's vehicle hit theirs from behind while they were stopped at a red light.

[9] The State's collision reconstructionist testified that he found nothing mechanical in his overall inspection of Harper's vehicle that would have either caused the vehicle to spontaneously accelerate to a high speed or prevented the driver from braking or steering.

Harper said that after the collision, he heard someone say, "You need some help?" and that he responded, "No, I don't. I'm okay," because he could hear sirens and knew "some real help" was about to arrive.[10] He recalled saying, "Stop," when he saw an arm go through the window by his daughter, unlock the door, and then open the door. Harper said that he saw an arm cross his daughter's lap to unbuckle her seat belt and that a man grabbed his daughter's car seat when the seat belt came unlatched. His daughter started yelling, and that noise "triggered" something in him. Harper turned around and started looking for his gun, found it on the floorboard by the gas pedal, grabbed it, turned back around, and fired it.[11] Harper said that he fired the weapon because he felt like his children were in danger but that no one was listening to him. He also said that at that moment, he did not know that the person he shot was trying to help and that he did not understand what was going on.

---

[10]Because the collisions had completely stopped the flow of traffic, numerous people were gathered at the scene. One of the would-be rescuers testified that he yelled at Harper to see if he was okay, trying to get his attention, but that he received no acknowledgment even though Harper was conscious.

[11]One of the children's would-be rescuers testified that he backed up after seeing Harper pull out the handgun, point it, and say, "It's your bad day." Another said he did not hear Harper say anything before he fired the gun. Two more testified that when they asked Harper if he needed to get his children out of the car, Harper replied, "Real recognize real," and that while they were trying to help the children, Harper said, "Get the fuck away from my car." The mother of Harper's twins explained that "real recognize real" means "real honest people know real honest people type thing" but said that she did not "speak a lot of signs."

7

During cross-examination, Harper agreed that he had testified that on December 14, 2011, he intentionally or knowingly caused Robinson's death by shooting him, that he also denied that he had intentionally engaged in the conduct that resulted in Robinson's death, and that he had also said that he did not intend to kill Robinson.[12] Harper testified that it was easier to shoot Robinson because he did not know him and that Robinson's taking his child changed everything.

Several witnesses testified that they never saw any indication that Robinson was armed or presented any danger and that they believed that Robinson was trying to help the two young children that were crying in the back seat of the smoking vehicle. Harper agreed that he did not see anything that would have caused an ordinary prudent person to believe that Robinson had a weapon, nor did he see Robinson with any deadly weapon. He further testified

---

[12]The confession-and-avoidance doctrine applies to the necessity defense, requiring a defendant to admit the conduct—both the act and the culpable mental state—of the charged offense to be entitled to a necessity instruction. *Juarez v. State*, 308 S.W.3d 398, 399, 405 (Tex. Crim. App. 2010); *see* Tex. Penal Code Ann. § 1.07(a)(10) (West Supp. 2014) (defining conduct to mean an act or omission and its accompanying mental state); *cf.* Tex. Penal Code Ann. § 2.03(c) (West 2011) (stating that the issue of a defense is not submitted to the jury unless evidence is admitted that supports the defense). Harper was charged with having intentionally or knowingly caused Robinson's death by shooting him with a firearm and with having intentionally, with the intent to cause serious bodily injury to Robinson, committed an act clearly dangerous to human life by shooting Robinson with a firearm, which caused Robinson's death.

that at the time he discharged his own weapon, he did not know what he was trying to protect his daughter from.[13]

When asked whether he could not have fired a warning shot as an alternative, Harper acknowledged that he could have done so but said, "I asked him not to more than once." He also acknowledged that he had used a hollow-point bullet and that the purpose of such a bullet is to kill.[14] Harper had bullets left in his gun after shooting Robinson, but he did not fire at anyone else.

Harper admitted that he did not hear or see Robinson do anything except try to save his children. After he realized that his bullet had made contact with Robinson, Harper testified that he "just laid back down" and slumped over for his own protection because he did not know what was going on outside his vehicle and he was still sleepy.

## C. Necessity

A necessity instruction states, in pertinent part, that conduct is justified if the actor reasonably believes the conduct is immediately necessary to avoid imminent harm. Tex. Penal Code Ann. § 9.22(1) (West 2011). This prong of the necessity defense requires evidence of a reasonable belief of both immediate

---

[13]Harper said, "I'm not sure," when asked whether he thought Robinson had a deadly weapon. He said, "Yes, sir," when asked, "Just like you weren't sure that [Robinson] meant you any harm, but you shot him anyway, right?"

[14]The Tarrant County Medical Examiner's Office firearm and tool mark examiner testified that a hollow-point bullet is designed to expand when it hits flesh.

9

necessity and imminent harm. However, a defendant's sincere belief that his conduct is immediately necessary to avoid imminent harm is unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of "immediate necessity" or "imminent harm" as legally defined. *Murkledove*, 437 S.W.3d at 25; *see Arnwine v. State*, 20 S.W.3d 155, 159 (Tex. App.—Texarkana 2000, no pet.) ("The defense of justification based on necessity is assessed from the standpoint of the accused."). The penal code defines "reasonable belief" as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex. Penal Code Ann. § 1.07(a)(42). It defines "harm" as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." *Id.* § 1.07(a)(25). "Imminent," while not defined in the penal code, means "something that is immediate, something that is going to happen now." *Murkledove*, 437 S.W.3d at 25 (quoting *Dewalt v. State*, 307 S.W.3d 437, 454 (Tex. App.—Austin 2010, pet. ref'd)). Harm is imminent when there is an emergency situation and avoiding that harm requires a "split-second decision" without time to consider the law. *Id.*

As set out above, the trial court did not err by denying Harper's requested necessity instruction because Harper did not show that he was entitled to the defense. At most, he produced evidence of his generalized fear and confusion after the collision and produced evidence that in his fugue state, which other evidence in the record reflected was due to his drug use, he shot and killed an

10

unarmed young man who, like others that Harper did not shoot, had tried to help him and his children after a catastrophic multiple-car collision. None of the evidence during the seven-day trial showed that Harper's shooting Robinson was immediately necessary to avoid imminent harm, or that an ordinary, prudent person in Harper's circumstances would have believed that it was.

To the contrary, the record proves quite the opposite. The record reflects that Harper's belief that it was necessary to shoot and kill a person helping his children escape from a mangled, smoking vehicle was unreasonable as a matter of law. *See Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010) ("[A] 'reasonable belief' is one that would be held by an ordinary and prudent person, not by a paranoid psychotic."), *cert. denied*, 131 S. Ct. 1606 (2011); *Jackson v. State*, 50 S.W.3d 579, 595 (Tex. App.—Fort Worth 2001, pet. ref'd) (stating that even if appellant had been scared of his pursuer, his testimony only raised an issue of the necessity to continue driving, not to drive over the speed limit, disregard traffic control devices, and veer into oncoming lanes of traffic); *see also Washington v. State*, 152 S.W.3d 209, 212 (Tex. App.—Amarillo 2004, no pet.) ("[T]he defendant's belief that his conduct was immediately necessary may be deemed unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of immediate necessity or imminent harm."). Because the record reflects that Harper's use of deadly force was not immediately necessary and did not avoid a greater, imminent harm, a necessity instruction was not the law applicable to the case. *See* Tex. Penal Code Ann. §§ 1.07(a)(42), 9.22;

11

*Arnwine*, 20 S.W.3d at 160 (observing that the existence of lawful alternatives to the commission of a criminal act may preclude a defendant from the defense of justification by necessity). We overrule Harper's first issue.

## D. Sudden Passion

At the punishment stage of a murder trial, the defendant may raise the issue as to whether he caused the death "under the immediate influence of sudden passion arising from an adequate cause." Tex. Penal Code Ann. § 19.02(d) (stating that if the defendant proves the sudden-passion issue in the affirmative by a preponderance of the evidence, the offense is a second-degree felony). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed . . . which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2).

The defendant has the burden of production and persuasion with respect to the issue of sudden passion, and to justify a jury instruction on the issue during the punishment phase, the record must at least minimally support an inference: (1) that the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; (2) that his sudden passion was in fact induced by some provocation by the deceased or another acting with him; (3) that he committed the murder before regaining his capacity for cool reflection;

12

and (4) that a causal connection existed between the provocation, passion, and homicide. *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013). A sudden passion charge should be given if there is some evidence to support it, even if that evidence is weak, impeached, contradicted, or unbelievable. *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003).

However, the evidence should not be so weak, contested, or incredible that it could not support a finding by a rational jury. *Davis v. State*, 268 S.W.3d 683, 693 (Tex. App.—Fort Worth 2008, pet. ref'd). A mere claim of fear does not establish the existence of sudden passion arising from an adequate cause. *Gonzales v. State*, 717 S.W.2d 355, 357 (Tex. Crim. App. 1986) (stating that for a claim of fear to rise to the level of sudden passion, the defendant's mind must be rendered incapable of cool reflection); *see also Fry v. State*, 915 S.W.2d 554, 559 (Tex. App.—Houston [14th Dist.] 1995, no pet.) (stating that there must be some evidence of immediate provocation that led to the homicide). And "[o]rdinary anger or causes of a defendant's own making are not legally adequate causes." *Hernandez v. State*, 127 S.W.3d 206, 211 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

As set out above, none of the evidence[15] showed that Harper experienced "sudden passion" as defined by the statute, provocation by Robinson—who tried

---

[15]During the punishment phase, the trial court admitted evidence about Nasir, the motorist who died from the collision. The jury also heard from another witness at the scene who saw Harper when the police removed him from the SUV. The witness testified that Harper appeared belligerent and under the

to do no more than the other would-be rescuers that Harper did not shoot—or an adequate causal connection between the provocation, passion, and homicide. *See, e.g., Davis*, 268 S.W.3d at 698 ("Davis points to no evidence in the record indicating that [the deceased] acted in a manner that would produce an emotion sufficient to render the mind of a person of ordinary temper incapable of cool reflection."); *see also Ayers v. State*, 606 S.W.2d 936, 940 (Tex. Crim. App. 1980) (concluding that appellant's medical incapacities—hypertension, coronary artery disease, heart enlargement, and periods of semi-consciousness—had no bearing on the evaluation of his response to provocation); *Lucas v. State*, No. 12-13-00378-CR, 2015 WL 1061498, at *3 (Tex. App.—Tyler Mar. 11, 2015, no pet.) (mem. op., not designated for publication) ("The record indicates that Appellant was mentally ill, intoxicated, and hallucinating when he killed Cobb, but these factors are not applicable in determining adequate cause."); *Miller v. State*, 770 S.W.2d 865, 867 (Tex. App.—Austin 1989, pet. ref'd) (stating that the statute does not contemplate what would constitute adequate cause from the perspective of an individual with impaired impulse control because "[t]he test is the response by a person of ordinary temper"). Therefore, the trial court did not err by denying the requested instruction, and we overrule Harper's second issue.

---

influence, that Harper shouted profanities, and that when he took a photo of Harper, he heard Harper say, "I'd fucking do it again." Harper's older sister testified for the defense.

## IV. Mistrial

In his remaining two issues, Harper argues that the trial court erred by denying his request for a mistrial based on the prosecutor's statements, which he contends were made solely with the intent to inflame the minds of the jurors.

Except in extreme cases, when it appears that the question is "'clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds,'" asking an improper question may be generally cured or rendered harmless by a withdrawal of the question and an instruction to disregard. *Gonzales v. State*, 685 S.W.2d 47, 49 (Tex. Crim. App.) (quoting *White v. State*, 444 S.W.2d 921 (Tex. Crim. App. 1969)), *cert. denied*, 472 U.S. 1009 (1985). To cause a reversal, the question must be obviously harmful to the defendant. *Id.*

The determination as to whether a given error calls for a mistrial must be made by examining the particular facts and circumstances of each case. *Hernandez v. State*, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990), *cert. denied*, 500 U.S. 960 (1991). When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for mistrial, the issue is whether the trial court abused its discretion by denying the request for mistrial. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). In determining whether a trial court abused its discretion by denying a mistrial, we balance three factors: (1) the severity of the misconduct (prejudicial effect); (2) curative measures; and (3) the certainty of conviction absent the misconduct. *Id.; Mosley*

*v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

In his third issue, Harper complains that he should have received a mistrial when the prosecutor referred to Robinson's death as an execution during Arlington Police Detective David Szatkowski's testimony:

Q. Okay. Now, this revolver, State's Exhibit 96, that Mr. Harper had that day holds five rounds, right?

A. Yes, ma'am.

Q. At a time. *He used one of those rounds to execute Clarence Robinson, correct?* [Emphasis added.]

> [Defense counsel]: Your Honor, I'm going to object to the term "execution."
>
> [Trial Court]: That's sustained.
>
> [Defense counsel]: And I'd ask the jury to disregard such comment.
>
> [Trial Court]: Rephrase it, [prosecutor].
>
> [Prosecutor]: Thank you.

Q. [Prosecutor]: He used one of the rounds—

> [Defense counsel]: Excuse me. Excuse me. Judge, I would respectfully request the Court to ask the Jury to disregard the comment.
>
> [Trial Court]: Jury will disregard it, the word.
>
> [Defense counsel]: And as required by law, I'd ask for a mistrial.
>
> [Trial Court]: Okay. That's denied.

16

Q. He used one of those rounds to shoot Clarence Robinson, correct?

A. Yes.

A few minutes earlier, Detective Szatkowski had testified that Robinson had died on December 14, 2011, because of a gunshot wound "to the head." The detective then testified that he did not see Harper shoot Robinson but that the weapon—which still contained four live rounds of ammunition—was recovered from Harper, along with ten additional rounds, when he was taken into police custody.

The Tarrant County chief medical examiner testified that the gunshot wound was to the left side of the forehead, around four inches below the top of the head and three inches in front of the left ear, and the autopsy diagram of the wound's location showed it just above the left eye. He testified about stippling, which is produced by burning and unburned particles of gunpowder that leave the gun's muzzle and pinch or hit the body surface and embed in the skin "if the target is within the range," which he said would be within three or four feet. Robinson had stippling on the side of his head from the gunshot.

Based on the above, the record reflects that Harper shot Robinson in the head from within a three- or four-foot distance and killed him without justification. In light of the trial court's instruction to disregard, Detective Szatkowski's preceding testimony that Robinson had died of a gunshot wound to the head, and the certainty of Harper's conviction based on the undisputed facts of this

17

case, we cannot conclude that the probable effect of the use of the term "execute," as opposed to "shoot," albeit inappropriate, adversely affected Harper's rights so as to present reversible error. *See Jackson v. State*, 649 S.W.2d 317, 321–22 (Tex. App.—Amarillo 1983, no pet.) (holding that prosecutor's reference to appellant as "garbage" did not warrant mistrial when the evidence clearly showed his guilt as charged in the indictment). We overrule Harper's third issue.

Finally, Harper contends that the prosecutor asked other inflammatory questions and made inappropriate sidebar comments. However, Harper admits that he did not object to any of these additional questions and comments.[16] Because these complaints were not preserved for our review, *see* Tex. R. App. P. 33.1, we overrule his final issue. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) ("If an issue has not been preserved for appeal, neither the court of appeals nor this Court should address the merits of that issue.").

## V. Conclusion

Having overruled all of Harper's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

---

[16]Despite rule of appellate procedure 33.1's requirement that error be preserved, Harper nonetheless complains that the trial court should have intervened to grant him a mistrial without requiring him to object, request any instructions to disregard the inflammatory remarks, or request the mistrial.

PANEL:  LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

PUBLISH

DELIVERED:  July 2, 2015



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00189-CR

| | | |
|---|---|---|
| Thomas Lester Harper | § | From Criminal District Court No. 2 |
| | § | of Tarrant County (1318353R) |
| v. | § | July 2, 2015 |
| | § | Opinion by Justice Sudderth |
| The State of Texas | § | (p) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By  /s/ Bonnie Sudderth
    Justice Bonnie Sudderth

# APPENDIX "B"

# MOTION FOR REHEARING

# IN THE COURT OF APPEALS
## FOR THE SECOND DISTRICT OF TEXAS
## FORT WORTH, TEXAS

### NO. 02-14-00189-CR

| | | |
|---|---|---|
| THOMAS LESTER HARPER,<br>APPELLANT | ][<br>][<br>][ | From Criminal District Court No.2 |
| | ][ | of Tarrant County |
| vs. | ][<br>][ | Trial Court Case No.1318353R |
| | ][<br>][ | Opinion by Justice Sudderth |
| THE STATE OF TEXAS,<br>APPELLEE | ][<br>][ | July 2, 2015 |

### APPELLANT'S MOTION FOR REHEARING

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, Thomas Lester Harper, Appellant in the above-styled and numbered appeal, and, pursuant to Rule 49.5(c) of the Texas Rules of Appellate Procedure, hereby files this Motion for Rehearing, and asks the Court to reconsider and withdraw its opinion of July 2, 2015 and shows as follows:

1. The Court in its opinion cites *Murkeldove v. State,* 437 S.W.3d 17 (Tex. App.— Ft. Worth 2014) for the premise that Appellant's requested instruction on necessity defense was properly denied by the trial court because an accused must have a sincere belief that the conduct is necessary to avoid imminent harm and that denial is proper if the undisputed facts demonstrate that there is a complete lack of necessity as a matter of law.

2. Appellant believes that the facts in *Murkledove* are distinguishable. In *Murkeldove*, Appellant went to a residence with a co-defendant to commit a burglary.

*Murkledove* knew that the co-defendant intended to kill the victim if the victim was present. The co-defendant shot and killed the victim and *Murkledove* was convicted of capital murder as a party. *Murkledove* urged that he raised the issue of necessity in *Murkledove's* confession.

3. In the current case, Appellant testified that he shot and killed the victim because he felt it was immediately necessary to protect his children. The court in its opinion states that Appellant testified that his children were in danger and that no one was listening to him.

4. No matter how weak, the necessity instruction must be given.

5. Certainly other witnesses testified that the children were not in any apparent danger. Appellant made several concessions under cross, but there was evidence directly from Appellant that he believed he needed to shoot the victim because he felt like his children were in danger.

6. It may appear weak, but it was some evidence and the requested instruction of necessity should have been given. *Juarez v. State,* 308 S.W.3d 398.399 (Tex. Crim. App. 2010).

7. Appellant respectfully requests the court to reconsider its opinion ruling against Appellant and withdraw its opinion, reverse and remand the case to the trial court.

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully requests the court to reconsider its opinion of July 2, 2015 and prays the court to withdraw its opinion, reverse and remand the case to the trial court.

Respectfully submitted,

RICHARD A. HENDERSON P.C.
100 Throckmorton Street, Suite 540
Fort Worth, Texas 76102
Telephone: 817-332-9602
Facsimile: 817-335-3940
*richard@rahenderson.com*



Richard A. Henderson
State Bar No. 09427100

ATTORNEY FOR APPELLANT


## CERTIFICATE OF SERVICE

A true copy of the Appellant's Motion for Rehearing has been electronically served on opposing counsel, Ms. Debra A. Windsor, Assistant Criminal District Attorney, Post-Conviction, Tarrant County District Attorney's Office, 401 W. Belknap Street, Fort Worth, Texas 76196, via the State's e-mail address, coappellatealerts@tarrantcounty.com and mailed, U.S. Regular Mail to Appellant, Thomas Lester Harper, TDCJ #01931894, Ellis Unit, 1697 FM 980, Huntsville, Texas 77343 on the 15th day of July 2015.



Richard A. Henderson

# APPENDIX "C"
# ORDER ON MOTION FOR REHEARING



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00189-CR

THOMAS LESTER HARPER                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM THE CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 1318353R

------------

## ORDER

------------

We have considered "Appellant's Motion for Rehearing."

It is the opinion of the court that the motion for rehearing should be and is hereby denied and that the opinion and judgment of July 2, 2015, stand unchanged.

The clerk of this court is directed to transmit a copy of this order to the attorneys of record.

SIGNED July 30, 2015.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:   LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.