

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00291-CR

JAMONTRE JOSHUA MOUTON,

                                                                        Appellant

 v.

THE STATE OF TEXAS,

                                                                        Appellee

From the 278th District Court
Walker County, Texas
Trial Court No. 29599

## MEMORANDUM OPINION

In three issues, appellant, Jamontre Joshua Mouton, challenges his murder conviction. *See* TEX. PENAL CODE ANN. § 19.02. Specifically, Mouton contends that: (1) the trial court erred by admitting gruesome images over his objection; (2) the trial court erred by refusing to give a requested instruction on the defense of necessity; and (3) the evidence is insufficient to support his conviction. We affirm.

## Background

In the instant case, Mouton was charged with killing Jalen McDuffie based on a dispute resulting from a drug transaction. *See id.* Mouton, who was fifteen years old at the time of the killing, was tried as an adult. At the conclusion of the evidence, the jury found Mouton guilty of the charged offense and assessed punishment at seventy-five years in prison. The trial court certified Mouton's right to appeal. Mouton filed a motion for new trial in the trial court, which the trial court denied. This appeal followed.

## Admission of Evidence

In his first issue, Mouton asserts that the trial court abused its discretion by admitting the bodycam video of Corporal Marshall Douglass of the Walker County Sheriff's Department, which was gruesome and not probative of a disputed issue.

STANDARD OF REVIEW & APPLICABLE LAW

Generally, photographs and videos recordings of crime scenes are admissible. *Huffman v. State*, 746 S.W.2d 212, 221 (Tex. Crim. App. 1988) (en banc). The trial court has sound discretion to admit photographic evidence over an objection. *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009). Photographs must have probative value, and the probative value must not be substantially outweighed by its inflammatory nature. TEX. R. EVID. 403; *Williams*, 301 S.W.3d at 690. Photographic evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Penry*

*v. State*, 903 S.W.2d 715, 751 (Tex. Crim. App. 1995); *see* TEX. R. EVID. 401. Videos may be more helpful to a jury than photographs because recordings give the jury a more panoramic representation of physical and forensic evidence. *Gordon v. State*, 784 S.W.2d 410, 412 (Tex. Crim. App. 1990).

The admission of photographs and videos are reviewed for an abuse of discretion. *Penry*, 903 S.W.2d at 751. In evaluating whether a trial court abused its discretion, our review is limited to determining whether the probative value of the photograph or video is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by consideration of undue delay or needless presentation of cumulative evidence. *Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). Relevant factors in determining whether the probative value is outweighed by the danger of unfair prejudice include the number of exhibits, their gruesomeness, their size and detail, whether they are close-up, the availability of other means of proof, and the unique circumstances of each case. *See Fields v. State*, 515 S.W.3d 47, 56 (Tex. App.—San Antonio 2016, no pet.) (citing *Young*, 283 S.W.3d at 874).

DISCUSSION

Although Mouton objected that the video was probative only of the fact that McDuffie had been shot, the video provided a wide, panoramic view of the crime scene. *See Gordon*, 784 S.W.2d at 412. Furthermore, the video depicted McDuffie's injuries, the realities of the crime committed, and the aftermath of the crime. The Court of Criminal

Appeals has held that visual images of the injuries a defendant inflicted on his victim are relevant evidence for the jury's consideration. *Salazar v. State*, 38 S.W.3d 141, 152-53 (Tex. Crim. App. 2001); *see Paredes v. State*, 129 S.W.3d 530, 540 (Tex. Crim. App. 2004) (holding that the trial court did not abuse its discretion by overruling appellant's objection to gruesome photos of the victim where the photos, albeit graphic, depicted the realities of the crime committed and its aftermath).

The video was also probative as to whether every shell casing was recovered, which was challenged by Mouton, and as to the chaos of the scene, especially when emergency personnel arrived. In addition, the video was not cumulative of other evidence; the video was not enhanced, repeated, edited, or modified to draw particular attention to any of the graphic imagery; and there is no indication that the jury was unduly influenced or inflamed by the admission of the video.

While we recognize that the video contains graphic imagery, merely because a photograph or video is gruesome does not render it inadmissible. *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999). Photographs that are gruesome because they depict a disagreeable reality simply depict the reality of the crime committed. *Id.* A trial court does not err by admitting photographs that are gruesome; it is a matter of balancing the probative value against unfair prejudice. *Id.*; *see Paredes*, 129 S.W.3d at 540. And after applying the appropriate factors, we cannot conclude that the probative value of the video is outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *see also*

*Young*, 283 S.W.3d at 874; *Fields*, 515 S.W.3d at 56.  Accordingly, we conclude that the trial court did not abuse its discretion by admitting the video into evidence over Mouton's objection.  *See Penry*, 903 S.W.2d at 751.  We overrule Mouton's first issue.

## The Defense of Necessity

In his second issue, Mouton complains that the trial court erred by declining to instruct the jury on the defense of necessity when the issue was raised by the evidence and was requested by trial counsel.

STANDARD OF REVIEW

We apply a two-step analysis in reviewing a claim of charge error.  *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).  First, we determine whether error exists in the charge.  *Id.*  If the charge is erroneous, we review the record to determine whether the error was harmful.  *Id.*

A trial court must submit a jury charge that sets forth the law applicable to the case.  TEX. CODE CRIM. PROC. ANN. art. 36.14; *see Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2007).  The trial court must instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence in the case.  *Walters*, 247 S.W.3d at 208-09.  "A defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks the testimony is not worthy of belief."  *Id.* at 209.  When reviewing a trial court's ruling denying a requested

defensive instruction, we view the evidence in the light most favorable to the defendant's requested instruction. *See Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). We review the trial court's decision not to include a defensive issue in the jury charge for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000).

Necessity is a justification defense that excuses a defendant's otherwise unlawful conduct if (1) the defendant reasonably believed the conduct was immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear. TEX. PENAL CODE ANN. §§ 9.02, 9.22; *see Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). Necessity is a confession-and-avoidance defense, meaning that the defendant is not entitled to a necessity instruction unless he admits to the conduct—both the act and the culpable mental state—of the charged offense and then offers necessity as a justification. *See Juarez v. State*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010). Stated differently, the defendant must "admit" or confess to violating the statute under which he is being tried, then offer necessity as a justification for his otherwise criminal conduct. *See Young*, 991 S.W.2d at 838.

DISCUSSION

Zakee Fedayeen testified that McDuffie wanted to buy two ounces of marihuana from Mouton. Mouton was a classmate of Fedayeen's, so Fedayeen set up the transaction. McDuffie and Fedayeen met Mouton in the parking lot of The Pines Apartments. McDuffie and Fedayeen were in McDuffie's car, and Mouton approached the car to complete the transaction. McDuffie purchased the marihuana, and Mouton inquired about purchasing a pistol that McDuffie had in the center console of the car. However, McDuffie and Mouton could not agree on a purchase price for the pistol. McDuffie and Fedayeen left the parking lot and went to the house of a friend of McDuffie's. At the friend's house, McDuffie "opened up the bag and started breaking the weed down into smaller bags." McDuffie realized that he had been shorted on the marihuana and became upset. Fedayeen testified that he and McDuffie's brother calmed down McDuffie. But McDuffie wanted to meet with Mouton to either get his money or get the amount of marihuana that he had been shorted.

Fedayeen and McDuffie eventually spoke with Mouton, and Mouton agreed to "mak[e] it right." They discussed "meeting up" at The Summit Apartments. Before the meeting at The Summit Apartments, Fedayeen and McDuffie drove to Mouton's house to find him. Mouton was not at his house. Fedayeen and McDuffie then proceeded to meeting spot at The Summit Apartments. Because they were unsure about what time they were meeting Mouton, Fedayeen and McDuffie sat in McDuffie's car for a while

until they decided to hang out at the apartment pool while they waited for Mouton. Because of the length of wait, McDuffie became "[i]mpatient, a little worrisome." He instructed Fedayeen to go start the car "[i]n case somebody gets shot or anything." Ten minutes later, McDuffie relaxed and told Fedayeen to leave the car and come to the pool to socialize. Fedayeen and other witnesses recalled that McDuffie was happy and calm at this point in time. While Fedayeen and McDuffie were socializing with others at the apartment pool, Mouton arrived and "[c]ame over to the side and waived at [Fedayeen]." Fedayeen and McDuffie walked to the side of the building to meet Mouton. Fedayeen and McDuffie were walking side by side while Mouton was walking about five feet in front of them. According to Fedayeen, once he and McDuffie turned a corner, Mouton turned around and pulled out a gun that Fedayeen did not know Mouton had. Fedayeen acknowledged that McDuffie had a gun tucked inside his pants "above his crotch" with his shirt covering it. Fedayeen further recounted that Mouton pointed his gun at McDuffie and ordered McDuffie to give him the gun that McDuffie was concealing. When McDuffie reached down to grab his gun, Mouton fired shots, which struck McDuffie and lead to his demise.

Despite the foregoing evidence, Mouton maintained in his interview with police that McDuffie shot at him and that he ran away from McDuffie, but then returned to the scene and fired shots. When asked for further clarification, Mouton stated that he came

back as Fedayeen and McDuffie were walking away, which amounted to a new interaction between Mouton and McDuffie.

For Mouton to have been entitled to a necessity instruction, there must be evidence that his conduct—shooting McDuffie—was "immediately necessary to avoid imminent harm." TEX. PENAL CODE ANN. § 9.22(1); *see Harper v. State*, 508 S.W.3d 461, 467 (Tex. App.—Fort Worth 2015, pet. ref'd) (noting that to raise a necessity defense, there must be "evidence of a reasonable belief of both immediate necessity and imminent harm"). The term necessary is not defined in the statute; thus, we must give the word meaning it is afforded by common usage. *See Lopez v. State*, 600 S.W.3d 43, 46 (Tex. Crim. App. 2020) (noting that courts may look to standard dictionaries to ascertain common usage of a term undefined by a statute that lacks technical meaning). Necessary ordinarily means "required to be done," which is consistent with the concept of necessity, which ordinarily involves "the fact of being required or indispensable." NEW OXFORD AMERICAN DICTIONARY 1171 (3d ed. 2010).

Here, the testimony revealed that Mouton chose the location of the shooting and brought a firearm, which he pointed at McDuffie. Mouton then ordered McDuffie to surrender his firearm and then shot McDuffie while he was attempting to comply with the order. There is no evidence that McDuffie threatened Mouton or that McDuffie fired or attempted to fire his gun at Mouton. Thus, it cannot be said that Mouton act of

shooting McDuffie was "immediately necessary to avoid imminent harm." TEX. PENAL CODE ANN. § 9.22(1); *see Harper*, 508 S.W.3d at 467.

And as noted earlier, Mouton's own description of the events belies his contention that a necessity instruction was warranted. Even if McDuffie shot first and Mouton fled, the fact that Mouton returned later and shot McDuffie indicates the commencement of a new interaction that did not amount to a split-second decision without time to consider the law by Mouton to shoot McDuffie to avoid imminent harm. *See Harper*, 508 S.W.3d at 467 ("[A] defendant's sincere belief that his conduct is immediately necessary to avoid imminent harm is unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of 'immediate necessity' or 'imminent harm' as legally defined."); *see also Stefanoff v. State*, 78 S.W.3d 496, 501 (Tex. App.—Austin 2002, pet. ref'd) ("[I]mminent harm contemplates a reaction to a circumstance that must be the result of a 'split-second decision [made] without time to consider the law' and requires 'an immediate, non-deliberative action made without hesitation or thought of the legal consequence." (quoting *Smith v. State*, 874 S.W.2d 269, 273 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd))).

Therefore, viewing the evidence in the appropriate light, we cannot say that the trial court abused its discretion by refusing to instruct the jury on necessity. *See* TEX. PENAL CODE ANN. § 9.22(1); *see also Bufkin*, 207 S.W.3d at 782; *Wesbrook*, 29 S.W.3d at 122. We overrule Mouton's second issue.

## Sufficiency of the Evidence

In his third issue, Mouton argues that the evidence is insufficient to support his murder conviction. We disagree.

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey*

*v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

DISCUSSION

Here, Mouton was charged with murder under section 19.02(b)(2) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 19.02(b)(2). "A person commits an offense if he . . . intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." *Id.* On appeal, Mouton contends that a rational factfinder could not find beyond a reasonable doubt that he was the aggressor and did not act in self-defense when he shot the person—McDuffie—who was pursuing him over a drug-sale dispute.

As stated earlier, the evidence showed that Mouton arranged the meeting with Fedayeen and McDuffie at The Summit Apartments. As described by Fedayeen, Mouton arrived at this meeting with a gun, brought Fedayeen and McDuffie away from

witnesses, pointed the gun at McDuffie, and fired the gun before McDuffie could respond to Mouton's demand to turn over his gun. As a result of being shot multiple times by Mouton, McDuffie died.

In his interview with police, Mouton recounted that McDuffie shot at him first and that he ran away from McDuffie, but then returned to the scene and fired shots. Texas Ranger Chris Cash testified that Mouton's story about the incident was not plausible because, based on the elevation and placement of vehicles and other obstructions at the scene, the location from which Mouton claimed to have fired the shots would be impossible. Ranger Cash further testified that the placement of shell casings found at the scene was consistent with Fedayeen's testimony. Furthermore, eyewitness Jacob Van Holten described Mouton as "walking back and forth" and "getting himself hyped up, pumped up" shortly before the shooting. And finally, Mouton admitted that he fled the scene and discarded the murder weapon in the Trinity River. *See Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981) ("Further, while flight alone will not support a guilty verdict, evidence of flight from the scene of a crime is a circumstance from which an inference of guilt may be drawn." (internal citation omitted)).

The issue of self-defense is a fact issue to be determined by the factfinder, who is free to accept or reject the defensive evidence. *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018). As the sole judge of the weight and credibility of the evidence, the jury is free to believe or disbelieve the testimony of all witnesses and to accept or

reject any or all of the defensive evidence. *See id.* at 608-09; *see also Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) ("As factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties."). "[A] jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory.'" *Braughton*, 569 S.W.3d at 609 (quoting *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)). We presume that the jury resolved conflicting inferences in favor of the verdict, and we defer to its determination of the evidentiary weight and witness credibility. *Id.* at 608; *see Criff v. State*, 438 S.W.3d 134, 136-37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

Accordingly, after reviewing all the evidence in the light most favorable to the jury's verdict, giving due deference to the jury's weight and credibility determinations, we conclude that, on the evidence presented, a rational trier of fact could have rejected Mouton's self-defense theory and assertion that he was not the aggressor and found the essential elements of the offense beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 19.02(b)(2); *see also Braughton*, 569 S.W.3d at 608-09; *Zuniga*, 551 S.W.3d at 732-33. As such, we overrule Mouton's third issue.

## Conclusion

Having overruled all of Mouton's issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson,
     and Justice Smith
(Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed February 8, 2023
Do not publish
[CRPM]

*(Chief Justice Gray concurs in the Court's judgment.  A separate opinion will not issue.)

