**Affirmed and Opinion Filed July 31, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-17-00852-CR

**GARY JAMES CUMMINGS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 06770**

# MEMORANDUM OPINION

Before Justices Lang, Myers, and Stoddart
Opinion by Justice Lang

Gary James Cummings appeals the trial court's final judgment convicting him of evading arrest or detention, enhanced by two prior convictions. The jury found Cummings guilty and that he used a deadly weapon. The trial court found the enhancements true and assessed his punishment at thirty years of imprisonment.

Cummings raises two issues on appeal, arguing: (1) the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon during the evading arrest or detention offense; and (2) the trial court erred when it overruled his objection to the admission of evidence relating to extraneous conduct and prior convictions. We conclude the evidence is sufficient and, even if the trial court erred in admitting the evidence of his extraneous conduct and prior convictions, that error was not harmful. The trial court's final judgment is affirmed.

## I. FACTUAL AND PROCEDURAL CONTEXT

On November 24, 2016, at approximately 1:45 a.m., Officer Dennis Marshall observed a vehicle rapidly approach an intersection and turn so quickly that he could hear the tires squeal. When Marshall observed the same vehicle fail to stop at a stop sign, he activated his emergency lights and attempted to stop the vehicle. However, the vehicle did not stop. Instead, the driver, later identified as Cummings, "disregarded stopping at" another stop sign and proceeded to drive in a "very rapid manner." After making a few turns, the vehicle failed to yield at a caution light[1] that permitted drivers in the opposite direction to have the right of way. Marshall observed that a vehicle, traveling in the opposite direction, "was able to pull over a little bit and slow down" avoiding any possibility of a collision.

Marshall continued to follow the vehicle. Then, while the vehicle was still in motion, Cummings crawled out the front driver's-side window and began running away from Marshall's patrol car. After Cummings left the vehicle, Marshall saw that the vehicle "had gone up on the curb," but did not strike another vehicle. Still driving his patrol car, Marshall continued to follow Cummings who was on foot. Cummings ran to a residence and attempted to enter it. Marshall observed Cummings grab the door knob and put his right shoulder to the door, trying to force it open. At this point, Marshall parked his patrol car and began to chase Cummings on foot, shouting out numerous, clear commands to Cummings to stop and lay on the ground. Cummings continued to run and tried to enter another house. Then, Marshall attempted "to remove [Cummings] from the porch of [the second] residence," but Cummings grabbed onto the handrail and would not let go. Marshall heard Cummings say something to the effect that Grayson County was trying to kill him. Once Marshall "was able to free [Cummings] from the handrail and get him down into the [front] yard" of the residence, they began to wrestle. Eventually, Marshall used his taser, but it

---

[1] The record also refers to the caution light as "blinking red lights."

was ineffective.  Two additional officers arrived to help.  They both heard Cummings yelling, "Don't kill me!"  After wrestling for a short period of time, the three officers succeeded in handcuffing Cummings.

Cummings was indicted for the offense of evading arrest or detention while using a deadly weapon.  The indictment alleged two prior convictions[2] for the purpose of enhancing his punishment.  Cummings asserted the affirmative defense of necessity, based on his claim that he was suffering from "medical paranoia."[3]  He testified on his own behalf at trial.  The jury found Cummings guilty and that he used a deadly weapon.  The trial court found the enhancements true and assessed his punishment at thirty years of imprisonment.

## II.  SUFFICIENCY OF THE EVIDENCE

In his first issue on appeal, Cummings argues the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon during the evading arrest or detention offense.  He claims the evidence does not show that an individual was placed in actual danger of serious bodily injury or death.  Rather, the evidence supports only a hypothetical danger.  The State responds that Cummings's "manner of using his motor vehicle posed a danger to pursuing officers and other motorists that was more than simply hypothetical."

### A.  Standard of Review

When reviewing the sufficiency of the evidence, an appellate court considers all of the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *State v. Bolles*, 541 S.W.3d 128, 133–34 (Tex. Crim. App. 2017); *Brooks v. State*, 323

---

[2] The two prior convictions alleged in the indictment were for the offenses of: (1) evading arrest or detention with a motor vehicle; and (2) receiving, possessing, or concealing stolen property.

[3] It was Cummings's theory at trial that he evaded arrest or detention because some prescription medication he was taking caused him to become paranoid and believe the police were trying to kill him.  It was the State's theory that, although Cummings was paranoid, the cause of his paranoia was methamphetamine use and the defense of "necessity" was inappropriate.

S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.). An appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017); *Brooks*, 323 S.W.3d at 899. All evidence, whether properly or improperly admitted, will be considered when reviewing the sufficiency of the evidence. *See McDaniel v. Brown*, 558 U.S. 120 (2010) (per curiam); *Lockhart v. Nelson*, 488 U.S. 33, 41–42 (1988); *Jackson*, 443 U.S. at 319.

### B. Applicable Law

Section 38.04 of the Texas Penal Code provides a person commits the offense of evading arrest or detention if he "intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a) (West 2016). Evading arrest or detention can constitute a misdemeanor, a state-jail felony, a third-degree felony, or a second-degree felony depending on the manner in which the offense is committed. *See* PENAL § 38.04. If a person uses a vehicle while in flight and has been previously convicted of evading arrest or detention, the offense is a third-degree felony. *See* PENAL § 38.04.

"In any felony offense in which it is 'shown' that the defendant "used or exhibited [a] deadly weapon[,]' the trial court 'shall' enter a deadly weapon finding in the judgment." *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017); *see* TEX. CODE CRIM. PROC. ANN. art. 42A.054(c) (West 2018). "Such a deadly weapon finding impacts a convicted felon's eligibility for community supervision, parole, and mandatory supervision." *Moore*, 520 S.W.3d at 908.[4]

---

[4] *See, e.g.,* CRIM. PROC. art. 42A.054(b)(1) (judge-ordered community supervision does not apply when there is deadly weapon finding); TEX. GOV'T CODE ANN. §§ 508.145(d) (not eligible for release on parole until inmate's actual calendar time served, without consideration of good conduct time, equals one-half of sentence or 30 calendar years, whichever is less, but in no event is inmate eligible for release on parole in less than two calendar years), 508.149(a)(1) (inmate may not be released to mandatory supervision), & 508.151(a)(2) (parole panel may set presumptive parole date if inmate never had conviction with affirmative deadly weapon finding) (West Supp. 2017).

In order to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the definition of a deadly weapon; (2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based; and (3) other people were put in actual danger. *See Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Expert or lay testimony may support a deadly weapon finding. *See Tucker v. State*, 274 S.W.3d 688, 691–92 (Tex. Crim. App. 2008).

The Texas Penal Code defines a "deadly weapon" as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." PENAL § 1.07(a)(17) (West Supp. 2017). An automobile is not a deadly weapon per se as it is not manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. *See Moore*, 520 S.W.3d at 908; *Pruett v. State*, 510 S.W.3d 925, 928 (Tex. Crim. App. 2017); *Brister*, 449 S.W.3d at 494; *see also* PENAL § 1.07(a)(17)(A). However, an automobile may, in the manner of its use or intended use, be capable of causing death or serious bodily injury. *See Moore*, 520 S.W.3d at 908; *Brister*, 449 S.W.3d at 494; *Drichas*, 175 S.W.3d at 798; *see also* PENAL § 1.07(a)(17)(B).

Appellate courts evaluate the manner in which the defendant used the motor vehicle during the felony. *See Moore*, 520 S.W.3d at 910 (discussing *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009)). When evaluating the manner of use, appellate courts consider whether the defendant's driving was reckless or dangerous during the commission of the felony. *See Moore*, 520 S.W.3d at 910 (discussing *Sierra*, 280 S.W.3d at 255). No intent to use the automobile as a weapon need be shown. *See Moore*, 520 S.W.3d at 909–10 (discussing *Walker v. State*, 897 S.W.2d 812, 814 (Tex. Crim. App. 1995) and *Drichas*, 175 S.W.3d at 798).

To sustain a deadly weapon finding requires evidence that "others" were endangered, and not merely a hypothetical potential for danger if others had been present. *See Moore*, 520 S.W.3d at 909. "Others" connotes individuals other than the actor himself, so danger to the actor alone does not meet the requisite standard of deadly weapon use. *See Brister*, 449 S.W.3d at 494. Also, evidence may be sufficient to support a deadly weapon finding in the absence of any evidence that either death or serious bodily injury occurred. *See Moore*, 520 S.W.3d at 909 (discussing *Mann v. State*, 58 S.W.3d 132 (Tex. Crim. App. 2001)).

### C. *Application of the Law to the Facts*

Cummings does not dispute that a motor vehicle can meet the definition of a deadly weapon. Accordingly, we will evaluate the manner in which Cummings used the motor vehicle during the felony and then, consider whether the evidence shows that other people were put in actual danger during the felony.

First, we evaluate the manner in which Cummings used the motor vehicle during the felony. *See Moore*, 520 S.W.3d at 910 (discussing *Sierra*, 280 S.W.3d at 255). Cummings was indicted for the offense of evading arrest or detention, while using a motor vehicle. Also, the indictment alleged two prior convictions, one of which was for evading arrest. As a result, the alleged offense with which he was charged in this case was a third-degree felony offense. *See* PENAL § 38.04. To evaluate the manner of Cummings's use of the motor vehicle, we consider whether Cummings's driving was reckless or dangerous during the commission of the felony. *See Moore*, 520 S.W.3d at 910 (discussing *Sierra*, 280 S.W.3d at 255).

We begin our analysis by noting that there are things that the record in this case does not reveal. *See Moore*, 520 S.W.3d at 912 (acknowledging what the record does not reveal, but noting there is other evidence to support deadly weapon finding). The record does not contain evidence of the speed at which Cummings was driving. Marshall admitted that he was not using radar and

did not "clock" Cummings's speed, but stated that Cummings was traveling at an "unsafe speed" and "low speed" in an urban area and referred to the events as a "slow speed chase." The evidence shows that Cummings slowed down at the stop signs, but did not stop. However, Marshall believed Cummings slowed down only to make a turn at the intersection.

The record reveals other evidence that the manner in which Cummings used or intended to use the motor vehicle was capable of causing death or serious bodily injury. *See Moore*, 520 S.W.3d at 912. The record shows that Marshall observed Cummings rapidly approach an intersection and turn so quickly that he could hear the tires squeal, fail to stop at two stop signs, drive in a "very rapid manner," ignore a caution light, and crawl out the front driver's-side window while the vehicle was still in motion, causing the vehicle to go "up on the curb." We conclude, regardless of whether Cummings intended to use the motor vehicle as a weapon, a reasonable fact finder could infer that the manner in which Cummings used the motor vehicle while evading arrest or detention was reckless and dangerous. *See Moore*, 520 S.W.3d at 909–10 (appellate courts consider whether defendant's driving was reckless or dangerous and no intent to use automobile as a weapon need be shown).

Second, to sustain the deadly weapon finding, the evidence must show that others were endangered, and not merely a hypothetical potential for danger if others had been present. *See Moore*, 520 S.W.3d at 909. Although the record shows that there was no evidence that there were other vehicles present at the first and second stop signs that Cummings failed to obey, the record reveals evidence that "others" were endangered. *See Moore*, 520 S.W.3d at 912. The record shows that after making a few turns while driving, Cummings ignored a caution light that permitted drivers in the opposite direction to have the right of way. Marshall saw that a vehicle traveling on the same street as Cummings, but in the opposite direction, was able "to pull over a little bit and slow down" avoiding any possibility of a collision. We conclude the record reflects "others" were

present and the manner in which Cummings used his motor vehicle placed those "others" in danger of death or serious bodily injury. Even though no collision occurred, a reasonable fact finder could infer that there was actual danger to the driver and any passengers in the other vehicle. *See Moore*, 520 S.W.3d at 909 (discussing *Mann*, 58 S.W.3d 132) (evidence may be sufficient to support deadly weapon finding in absence of any evidence that either death or serious bodily injury occurred).

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient to support the jury's deadly weapon finding. Issue one is decided against Cummings.

## III. EVIDENCE OF PRIOR CONVICTIONS AND EXTRANEOUS OFFENSES

In issue two, Cummings argues the trial court erred when it overruled his objection to the admission of evidence relating to extraneous conduct and prior convictions because: (1) the evidence of his methamphetamine use was inadmissible under Texas Rule of Evidence 404(b) because it was not offered for a permissible purpose or relevant; and (2) the evidence of his prior convictions was inadmissible under Texas Rule of Evidence 609 because more than ten years had passed since his conviction for some of the offenses and the probative value of his prior convictions was outweighed by their prejudicial effect. Cummings claims that, although he and the State disagreed as to the cause of his paranoia, the cause was not relevant to or probative of the elements of his necessity defense or the deadly weapon issue. The State responds that the evidence showing Cummings's paranoia was more consistent with methamphetamine use than the prescription medications Cummings claimed caused his paranoia was permissible to rebut Cummings's defensive theory. Also, the State responds that Cummings's affirmative defense of necessity relied solely on his credibility, so his prior convictions for crimes of moral turpitude were relevant.

However, we need not address the merits of Cummings's complaint. Rather, assuming, without deciding, the trial court erred when it overruled Cummings's objection to the admission

of the State's rebuttal evidence that his paranoia was the result of methamphetamine use, not prescription medication, we will review the record to determine whether the alleged error was harmful error. *See Werner v. State*, 412 S.W.3d 542, 547 (Tex. Crim. App. 2013) (neither defendant nor State bears burden of demonstrating harm); *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001) (neither the State nor appellant must demonstrate harm when an error has occurred; it is appellate court's duty to assess harm); *Taylor v. State*, 93 S.W.3d 487, 503 (Tex. App.—Texarkana 2002, pet. ref'd) (noting parties may suggest how such harm is shown or not shown).

### A.  Non-Constitutional Error

The erroneous admission of evidence is non-constitutional error. *See Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008).  Pursuant to rule 44.2(b), "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  TEX. R. APP. P. 44.2(b).  A substantial right is affected if the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Gonzalez*, 544 S.W.3d at 373; *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011).  If the error did not influence the jury or had but a slight effect, the error is harmless. *See Gonzalez*, 544 S.W.3d at 373; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). An appellate court should examine the record as a whole when conducting a harm analysis. *See Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002).  When conducting a harm analysis, an appellate court should consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error. *See Gonzalez*, 544 S.W.3d at 373 (citing *Motilla*, 78 S.W.3d at 356–58).

–9–

### *B. Affirmative Defense of Necessity*

Necessity is a statutory justification defense that is raised for purposes of exonerating a person's otherwise illegal conduct. *See* PENAL § 9.22 (West 2011); *Stefanoff v. State*, 78 S.W.3d 496, 500 (Tex. App.—Austin 2002, pet. ref'd). Justification defenses, including necessity, are based on the confession-and-avoidance doctrine, which requires a defendant to admit the conduct—both the act or omission and the requisite culpable mental state—of the charged offense. *See Juarez v. State*, 308 S.W.3d 398, 401–04 (Tex. Crim. App. 2010) (discussing confession-and-avoidance doctrine with respect to affirmative defenses of necessity, self-defense, and Good-Samaritan defense).

> Conduct is justified by necessity if:
>
> (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
>
> (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
>
> (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

PENAL § 9.22; *see Stefanoff*, 78 S.W.3d at 500.

A necessity defense requires that the defendant reasonably believe that his conduct is immediately necessary to avoid a greater harm. *See* PENAL § 9.22; *Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010). A "reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances. *See* PENAL § 1.07(42); *Mays*, 318 S.W.3d at 385; *see also Harper v. State*, 508 S.W.3d 461, 467–68 (Tex. App.—Fort Worth 2015, pet. ref'd); *Rodriquez v. State*, No. 13-16-00396-CR, 2018 WL 2252882, at *5–6 (Tex. App.—Corpus Christi May 17, 2018, no pet. h.) (mem. op., not designated for publication). A defendant's claim that his "paranoid ideations" raise a reasonable belief that his actions were justified is not supported by "law or common sense." *See Mays*, 318 S.W.3d at 385 ("[Defendant's] claims that 'his

paranoid ideations and psychosis' raise a 'reasonable belief' that his actions were justified is supported neither by law nor common sense."); *see also Rodriguez*, 2018 WL 2252882, at *5–6. Texas law does not recognize the "ordinary and prudent" paranoid for purposes of penal code justification defenses. *See Mays*, 318 S.W.3d at 385; *see also Jackson v. State*, 160 S.W.3d 568, 572 (Tex. Crim. App. 2005) (evidence of defendant's paranoia, presented as excuse for crime, simply provides motive for intentional act of murder); *Harper v. State*, 508 S.W.3d 461, 467–68 (Tex. App.—Fort Worth 2015, pet. ref'd) (defendant's belief it was necessary to shoot person due to generalized fear and confusion after collision, which other evidence showed was due to drug use, was unreasonable as matter of law); *Rodriguez*, 2018 WL 2252882, at **4–6 (trial court did not err in excluding testimony of psychologist that defendant suffered from delusional disorder to support self-defense and to negate mens rea in murder case); *cf. Ruffin v. State*, 270 S.W.3d 586, 596–97 (Tex. Crim. App. 2008) (expert evidence of defendant's paranoid delusions admissible as it related to defendant's intent to shoot at police officers, unless otherwise barred by evidentiary rules).

The defendant has the initial burden of producing evidence regarding the necessity defense. *See* PENAL § 2.03(c) (West 2011); *Stefanoff*, 78 S.W.3d at 500. If the defendant makes this initial showing, then the burden shifts to the State to disprove the necessity defense beyond a reasonable doubt. *See* PENAL § 2.03(d); *Stefanoff*, 78 S.W.3d at 500.

### C. Application of the Law to the Facts

Because Cummings admitted all of the elements of the evading arrest or detention offense by asserting an affirmative defense, the only issues at trial were his defense of necessity and the alleged use of a deadly weapon. Also, the record shows that the parties agreed that Cummings

was suffering from paranoia during the offense of evading arrest.[5]  However, the State and Cummings disagreed as to the cause of his paranoia.  Cummings claimed that he was acting under a "medical state of paranoia," which was a side effect of some legally prescribed medications. According to Cummings, he evaded arrest because he believed the police were trying to kill him. The State rebutted this evidence with: (1) expert testimony that the specific medications prescribed to Cummings were unlikely to cause "delusions or hallucinations"; (2) expert testimony that Cummings's "paranoia" was consistent with methamphetamine use; and (3) evidence that Cummings had admitted to using methamphetamine.

The evidence of Cummings's paranoia may provide a motive for his intentional act of evading arrest.  *See Jackson*, 160 S.W.3d at 572 (evidence of paranoia simply provided motive for murder and did not provide excuse for intentional act).  However, Cummings argues that his paranoia raises a "reasonable belief" that his actions were justified is supported "neither by law nor common sense."  *See Mays*, 318 S.W.3d at 385–86 (self-defense based upon "paranoid ideations and active psychosis" not recognized defense in Texas); *see also Rodriquez*, 2018 WL 2252882, at *4–6 (trial court did not err in excluding testimony of psychologist that defendant suffered from delusional disorder as basis for self-defense and to negate mens rea in murder case). Necessity based upon paranoia is not a recognized defense in Texas.  *See Mays*, 318 S.W.3d at 385–86; *see also Rodriquez*, 2018 WL 2252882, at *4–6.

We conclude that, even if the trial court erred when it overruled Cummings's objection to the evidence of his extraneous conduct and prior convictions to rebut his affirmative defense of necessity, Cummings was not harmed by the error because, as a matter of law, Cummings's belief

---

[5] On appeal the State argues that it did not concede Cummings was suffering paranoid delusions at the time of the offense. However, during closing argument, the State argued:

> The facts of [Cummings's] behavior that night on 11-24-16 are consistent with methamphetamine use.  No doubt about it, [] Cummings was in a weird state of mind that night.  I'm not disputing that.  There was something that wasn't right with him. . . . Irrational and paranoid behavior.  Irrational and paranoid behavior is a classic symptom of methamphetamine. . . . Methamphetamine makes you paranoid and delusional.

–12–

that it was necessary to evade arrest because the police were trying to kill him, allegedly induced by prescription medication, does not satisfy the requirement that he reasonably believed his conduct was immediately necessary to avoid a greater harm. *See Mays*, 318 S.W.3d at 385–86; *see also Harper*, 508 S.W.3d at 468; *Rodriquez*, 2018 WL 2252882, at *4–6.

Issue two is decided against Cummings.

## IV.  CONCLUSION

The evidence is sufficient to support the jury's finding that Cummings used or exhibited a deadly weapon during the commission of the offense.  Even if the trial court erred in admitting the evidence of his extraneous conduct and prior convictions, that error was not harmful.

The trial court's final judgment is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
170852F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GARY JAMES CUMMINGS, Appellant

No. 05-17-00852-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 15th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 06770.
Opinion delivered by Justice Lang. Justices Myers and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 31st day of July, 2018.